

IN THE
TENTH COURT OF APPEALS

No. 10-11-00018-CV

IN THE MATTER OF THE MARRIAGE OF
LARRY DON BIVINS
AND
CARMEN MARTINEZ BIVINS

From the 378th District Court
Ellis County, Texas
Trial Court No. 68,799D

O P I N I O N

Larry Don Bivins appeals the trial court's judgment awarding damages and attorney fees using Chapter 9 of the Texas Family Code to enforce post-divorce turnover of real property. We affirm the trial court's judgment.

BACKGROUND

Larry Don Bivins ("Bivins") was married to Carmen Martinez ("Martinez"). When the parties split up in 2004, Temporary Orders were entered giving Bivins the residence to live in and prohibiting Martinez from access to it. Other property was maintained by each party which is not relevant to this appeal. In early 2006, the parties resolved their marital issues through a Mediated Settlement Agreement ("MSA"). Bivins agreed to vacate the marital residence on April 1, 2006. The Decree of Divorce was entered on August 4, 2006. At some point in time, the agreements fell apart. Both

parties dug their heels in and several Motions to Enforce were filed with ensuing court orders that give insight into the continuing animosity between the parties. After one such Motion to Enforce, the court ordered Bivins to leave the residence on August 18th. Martinez took possession on August 19th of a demolished home. In December, 2006, Martinez filed her Original Petition for Damages and Enforcement seeking damages for repairs to make the home livable. After the trial, Martinez was awarded a money judgment on December 10, 2010 for the cost of repairs and attorney fees. Findings of Fact and Conclusions of Law were entered.

The provision of the Decree that is the focus of this litigation follows:

Larry Don Bivins is ORDERED to vacate the premises at 1100 FM 983, Ferris, Texas, on or before April 1, 2006, and represents that all improvements are in workmanlike state of repair at the time of signing this Decree, and will be of same or better repair on date of delivery.

Bivins complains to this Court that Martinez's claims are barred by *res judicata*; that an improper measure of damages was applied; that the experts were not qualified nor is their testimony factually or legally sufficient; and that attorney fees should be limited and are not supported by the evidence.

### RES JUDICATA

Bivins complains that Martinez's claim for damages could have been decided during the divorce and that at the time Martinez took possession of the residence and saw its condition, the trial court's plenary power had not expired. He maintains that Martinez should have requested a new trial instead of seeking damages long after the court lost jurisdiction to set aside the Decree.

*Facts*

Bivins, in the prior litigation, sued Martinez for divorce which included only property and debt division. There were no minor children. During the divorce, the parties operated under Temporary Orders which gave Bivins exclusive possession of the residence. Martinez was enjoined from access. The parties divided the property and debts by mediation and the agreement was signed by both parties in February, 2006. It contained a provision making it "binding on the parties and shall not be subject to revocation." The Divorce Decree entered by the trial court on August 4, 2006, was not signed by the parties. Bivins asked the court to enforce the property division. Martinez was ordered to transfer retirement benefits to him. Martinez also requested enforcement of the property division. Bivins was ordered to deliver a vehicle and vacate the home by August 18, 2006. Martinez took possession on August 19th. While those orders were not appealed, they impact an evaluation of facts in the prior litigation.

By her Original Petition for Damages and Enforcement, Martinez asserted causes of action for negligence, exemplary damages, breach of contract, enforcement of the MSA and Temporary Orders, deceptive trade practices, and Texas Family Code Chapter 9, damages for repairs and the diminished value. She did not challenge the property division awarded in the Decree. She had no claim for damages until after she took possession of the home and saw its condition. Through various Motions for Summary Judgment and Special Exceptions, the trial court excluded claims that were attacks on the Decree. She has not appealed these rulings. The claim that survived was for Texas Family Code Chapter 9 damages.

*Holding*

*Res judicata*, or claims preclusion, prevents the re-litigation of a claim that was adjudicated and resolved by a final judgment, as well as related matters that with the use of diligence should have been litigated in the earlier suit. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex. 1992).

Texas takes a transactional approach to claims preclusion. The Supreme Court in *Barr* stated that

> A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action. Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit.

*Id.* at 630.

Texas Family Code section 9.010(a) states that "If a party fails to comply with a decree of divorce or annulment and delivery of property awarded in the decree is no longer an adequate remedy, the court may render a money judgment for the damages caused by that failure to comply." TEX. FAM. CODE ANN. § 9.010(a) (West 2006). Martinez did not challenge the property division awarded in the Decree. The orders on the various Motions to Enforce were necessary to give effect to the property division in the Decree.

Martinez had no claim for damages until after she took possession and saw its condition. Bivins cannot use his right to exclusive possession of the premises as a shield of protection and later argue that Martinez should have made a claim for damages to the home using his claim as a sword against her subsequent suit.

Bivins would have his ex-wife file a Motion for New Trial if she wasn't happy

with the property division. By the time Martinez took possession of the home, the property had been divided: he had his business, one half of her retirement and his vehicles, she had the house, one half of her retirement, her vehicles, and they each had assorted personal property. Martinez had to choose whether to re-litigate the property division or seek damages for the failure to comply with the property division in the decree. She chose to file a suit for damages. The issues involved in the divorce are not the same as those in the suit for damages. *See e.g. Eberstein v. Hunter*, 260 S.W.3d 626, 628-629 (Tex. App.—Dallas 2008, no pet.) (where post-divorce petitions to enforce property award and to enforce contractual alimony provision were filed under same case number as underlying divorce, both petitions were distinctly different actions that were prosecuted separately).

Bivins's first issue is overruled.

### EXCEEDING THE AUTHORITY OF TEXAS FAMILY CODE CHAPTER 9

Bivins complains that the trial court exceeded its authority in enforcing the Mediated Settlement Agreement ("MSA"); that the Decree is incapable of enforcement; that the court was without authority to clarify or modify its Decree; and that awarding damages is an impermissible divesting of Bivins's separate property.

*Facts*

As recited above, the provision of the Decree that is the focus of this litigation is as follows:

> Larry Don Bivins is ORDERED to vacate the premises at 1100 FM 983, Ferris, Texas, on or before April 1, 2006, and represents that all improvements are in workmanlike state of repair at the time of signing this Decree, and will be of same or better repair on date of delivery.

Ultimately, the trial court ordered Bivins to vacate the property on August 18, 2006. The property was vacated by Bivins as ordered. The testimony and exhibits indicated that when Martinez took possession the next day, there was trash in the house (four dumpsters full); sewage backed up in the garbage disposal and in the dishwasher from the septic tank overflow; an icemaker was removed allowing the water line to leak over the floor causing mildew and warping the floor; water stains on the ceilings on the first and second floors; tubs and sinks so poorly cared for they had to be replaced; stairs and porches that were unusable; rotting wood and peeling paint on the house, gazebo, and barn; fret work on the front porch that could not be replaced and missing doors; carpet that had to be replaced after attempts to clean it were unsuccessful; a front driveway with holes so numerous and large that a separate path had been created to reach the house; dented siding on the barn; telephone units pulled from the walls; and other damages too numerous to detail every item.

Martinez testified that "[the house] wasn't like that when I left." This testimony by her was not refuted.

The trial court entered Findings of Fact and Conclusions of Law which in relevant part are as follows:

…

2.     The Court finds that the parties entered into a Mediated Settlement Agreement on the first day of February, 2006 which provides as follows:

> …all improvements are in a workmanlike state of repair at time of signing and will be of same or better repair on the date of delivery – signed by Larry Don Bivins, Petitioner.

3.     The terms of the Decree of Divorce between Plaintiff and Defendant provides as follows:

> Larry Don Bivins is ordered to vacate the premise [sic] at 1100 FM 983, Ferris, Texas, on or before April 1, 2006 and represents that all improvements are in workmanlike state of repair at the time of signing this Decree and will be of same or better repair on date of delivery.
>
> …
>
> 6. The Court further finds and concludes that under the provision of the Family Code, Section 9.010, the court has the power to award a judgment to enforce its decree in the event delivery of property is no longer an adequate remedy.
>
> …
>
> 7. The Court finds that Defendant failed to deliver the property in a workman-like state of repair to the Plaintiff as Defendant had agreed to do.
>
> 8. The Court further finds that delivery of property is no longer an adequate remedy and renders [sic] money judgment for the damages sustained by the Plaintiff.
>
> …
>
> 15. The Court finds that the Mediated Settlement Agreement should be enforced.

*Holding*

In *Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979), the Supreme Court held that once an agreement of the parties is incorporated into the decree it is not merely a contract but is the judgment of the court. This appeal is distinguishable from *Gorena* since the Bivins/Martinez Decree was not signed by the parties and would be unenforceable as a contract. "Despite the fact that a judgment has its genesis in an agreement between the parties, the judgment itself has an independent status." *Id.* Martinez did not seek to have the Decree enforced as a contract. It is, however, enforceable as the judgment of the court.

The trial court, however, found that the MSA should be enforced. Findings of

Fact in a bench trial have the same force as a jury's answers to questions in a jury trial. They are reviewed for factual and legal sufficiency by the same standards. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (factual sufficiency); *Anderson v. Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991) (legal and factual sufficiency). A complete reporter's record was part of the record reviewed by this Court. Therefore, findings by the trial court are not conclusive. *Tierra Sol Joint Venture v. City of El Paso*, 311 S.W.3d 492, 498 (Tex. App.—El Paso 2009, no pet.). The trial court had within its power the ability to enforce its judgment and did so.

Bivins, on appeal, asserts that he repudiated the MSA and, therefore, it cannot be enforced. Bivins did not appeal any denial of his repudiation after the trial court's incorporation of the MSA into the Divorce Decree which was entered on August 4, 2006. Repudiation cannot be raised for the first time in this appeal. TEX. R. APP. P. 33.1; *see Milner v. Milner*, 361 S.W.3d 615, 618-619 (Tex. 2012).

Bivins also complains that the Decree cannot be modified or clarified and that the "representation" is incapable of enforcement. The trial court neither modified nor clarified this paragraph of the decree by its decision. Martinez asked for and was awarded monetary damages. "We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it." *State Bar of Texas v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980); TEX. R. CIV. P. 71.

The trial court properly applied Texas Family Code section 9.010 to this situation and heard evidence as to why enforcement of the Decree was no longer an adequate remedy indicating that an award of damages was the appropriate remedy. These facts are a classic reason for the creation of this statute.

Bivins offers no case law in support of his position that the court abused its discretion in awarding damages.

Bivins would urge this Court to hold that the trial court divested him of separate property to pay these damages. A claim for separate property usually arises when there is a dispute over characterization. The property awarded to each of these parties in the Decree became their separate property when the divorce was final. It then became subject to whatever debts each incurred afterwards. His assertion is implausible.

Bivins's second issue is overruled.

### MEASURE OF DAMAGES USING NON-SCIENTIFIC EXPERT TESTIMONY

Bivins's next three issues will be dealt with together since they relate to damages, Martinez's experts's interpretation of the phrase "workmanlike state of repair," and the sufficiency of the evidence.

*Facts*

In her Third Amended Original Petition for Damages and Enforcement, Martinez asserted damages of $107,198.14. Martinez testified that when she took possession of the house, she and others took pictures. She testified that she paid $88,682.10 for the repairs. The testimony consisted of payments for repairs to the items mentioned previously and many others. There was also testimony that would not have been associated with the repair of the house, *i.e.* replacement of slashed tires on the tractor and veterinarian bills for a sick dog; that the agriculture exemption had been lost thereby increasing taxes owed by Martinez; that numerous items of personal property awarded to Martinez were missing; that insurance proceeds had paid for some repairs;

and that some repairs were upgrades. After hearing from the witnesses, the trial court ordered Bivins to pay $48,305.42.

Martinez proffered the testimony of three individuals as experts: William Robertson ("Robertson") and John Foster ("Foster") – building contractors, and Patrick Barrientez ("Barrientez") – fencing contractor. Robertson and Foster had been residential contractors for over 10 years. Barrientez had been building fences for over 15 years.

Robertson testified about the condition of the property when Martinez took possession, the repairs needed to make the house livable, and the reasonableness of the invoices for the work done. He did not testify about the completed repairs. His testimony was not refuted.

Foster opined on his inspection of the property after repairs were completed. During this inspection, he reviewed Martinez's invoices. He also compared the completed repairs to photos taken by Martinez of the condition of the home before the repairs were started. As they walked through the house, he examined and tested the new equipment and its installation. He related that there were certain items he did not test such as phones and the roof. He reported that certain repairs were unfinished. Over the objections of Bivins's attorney, he testified in laborious detail of specific repairs that he observed comparing the work which had been completed at the time of his inspection to the pictures taken by Martinez and the invoices. He repeatedly stated that the repairs which he observed had been done correctly. When asked by Bivins's attorney his interpretation of "workmanlike condition," Foster stated, "…it is in a working condition." His testimony was uncontroverted.

Barrientez testified about the perimeter fence and pens at the barn – before and after repairs. Bivins objected to Barrientez testifying about the "workmanlike state of repair" and the work he performed. Barrientez related that

> …(the fence) was broken up. The whole fence was broken; fence posts bent over; H-poles pulled up out of the corners…The external pen the barn where the chutes and all that were, it was – like I say, the pipe was rusted out. The weeds were overgrown in the barn…the dirt had settled so much that the concrete was exposed. So there was no – nothing holding the structure together outside of that. All that had to come out. And the pipe was replaced, and chutes were put back in.

When asked by Bivins's attorney the meaning of "workmanlike state of repair" he replied, "I would think that it would be something that's within working order."

*Holding*

The proper measure of damages is the cost of repairs. *Pasadena State Bank v. Isaac*, 288 S.W.2d 127, 128-129 (Tex. 1950); *Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture*, 50 S.W.3d 531, 545-546 (Tex. App.—El Paso 2001, no pet.); *Nielson v. Okies*, 503 S.W.2d 614, 616 (Tex. Civ. App.—El Paso 1973, no writ); *Hill & Hill Truck Line, Inc. v. Powell*, 319 S.W.2d 128, 133 (Tex. Civ. App.—Waco 1958, no writ).

None of these men had formal education in their areas of expertise. The trial court properly determined that these witnesses were qualified to testify in the areas for which their testimony was offered. They did not need college degrees to be qualified. TEX. R. EVID. 702; *Glasscock v. Income Property Services, Inc.*, 888 S.W.2d 176, 180 (Tex. App.—Houston [1st Dist.] 1994, writ dism'd by agreement). *See Page v. State Farm Lloyds*, 259 S.W.3d 257, 266-268 (Tex. App.—Waco 2008) *rev'd on other grounds*, 315 S.W.3d 525 (Tex. 2010).

Were their opinions reliable?

After reviewing invoices of the work, Robertson gave his opinion about the fairness of the invoices and reasonableness of the costs of repair. He was not permitted to testify about the actual repairs. He was also not allowed to testify about an examination of the property and repairs made immediately before his testimony since the opinions were not disclosed. Over the objection of Bivins's attorney, Robertson testified that the work as invoiced was reasonable and that the work shown on the invoices was necessary. These invoices had been produced in response to a Request for Production. Over Bivins's objection, the court admitted them. Experts are permitted to use evidence that may otherwise be hearsay in rendering their opinions. *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 440 (Tex. 2007).

The trial court's responsibility is to evaluate the facts against the opinions to determine if there is a sufficient connection between the facts and the opinions, *i.e.* that the opinions are reliable and relevant. TEX. R. EVID. 702; *see Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590; 113 S. Ct. 2786; 125 L. Ed. 2d 469 (1993) ("Proposed testimony must be supported by appropriate validation - i.e. 'good grounds,' based on what is known."). "... [A] beekeeper need not have published his findings that bees take off into the wind in a journal for peer review, or made an elaborate test of his hypotheses. Observations of enough bees in various circumstances to show a pattern would be enough to support his opinion. But there must be some basis for the opinion offered to show its reliability. Experience alone may provide a sufficient basis for an expert's testimony in some cases, but it cannot do so in every case." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998); *see also In the Interest of D.S.*, 19 S.W.3d 525, 529 (Tex. App.—Fort Worth 2000, no pet.). This Court finds that the trial court

properly admitted the expert testimony.

Once the court has determined the expert is properly qualified and the testimony comports with Rule 702 and case law, the court must decide the weight to be given to the opinion. *See id.* This Court will not invade the trial court's decision regarding the weight given an expert's testimony unless there is a clear abuse of discretion. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). This Court finds no such abuse.

Bivins also takes issue with Foster and Barrientez testifying about "workmanlike state of repair."

With no cases construing this phrase in the context of the Family Code, the Court looks to similar phrases in other areas of the law.

Claims for breach of implied warranty use a comparable phrase "to repair in a good and workmanlike manner." The Texas Supreme Court defined good and workmanlike as "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). Thus, the inquiry is into the performance of the service provider. *Id.* at 355. In this case it is undisputed that Bivins in the MSA agreed "that all improvements are in workmanlike state of repair at the time of signing this Decree, and will be of the same or better repair on date of delivery." They were not. Bivins's attorney unsuccessfully questioned several witnesses about when these damages occurred or the condition of the property before the damage. All responses save one were, "I don't know." Martinez alone

testified, "[the house] wasn't like that when I left." Bivins chose not to testify or present any expert testimony.

Bivins's third, fourth and fifth points of error relating to damages and expert opinions are overruled.

### ATTORNEY FEES

Bivins, by points of error six and seven, asserts that the trial court erred in not limiting attorney fees and that they are not supported by the evidence.

*Facts*

In response to Bivins's Request for Disclosure, Martinez designated her attorney as an expert on attorney's fees. In response to Requests for Production, she objected to producing records from her attorney, except her contract which was produced, asserting attorney-client privilege. Bivins filed Special Exceptions to Martinez's First Amended Original Petition for Enforcement and for Damages requesting more specific details on attorney fees. It was denied. No Motion to Compel or request for a Protective Order was considered by the trial court addressing objections to attorney-client privilege.

Bivins objected at the trial to attorney testimony of time and fees which were overruled. In response to an objection to a summary of costs not produced by Martinez, the trial court properly refused to admit it. It was not produced in discovery.

The trial court partially granted summary judgment, special exceptions, and struck an expert based on motions filed by Bivins. Martinez's attorney testified about his hourly rate, the number of hours expended on the case, and the costs he had paid on behalf of his client. He further testified about his legal experience, that the time was

necessary, and that the fees were reasonable in Ellis County. He testified that he had $22,200 in fees and $1,891 in court costs. Martinez was awarded $20,000 as attorney fees.

*Holding*

Where there are objections to discovery, the party seeking discovery can either file a Motion to Compel or seek a ruling on objections. TEX. R. CIV. P. 193.4(a) or 215.1(b). The requestor waives the failure to produce documents when there is no ruling on the objections. *Pace v. Jordan*, 999 S.W.2d 615, 622 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

Bivins complains that Martinez did not refer to the relevant statute to recover attorney fees. No Special Exception complained of any omission. It is waived in light of Texas Family Code section 9.014 authorizing the award of attorney fees for suits to enforce divorce decrees. TEX. FAM. CODE ANN. § 9.014 (West Supp. 2011).

The party requesting attorney fees is required to exclude fees that are not earned in pursuing the claims presented during trial of the case. Normally, "…a claimant must segregate recoverable from unrecoverable fees. [And]…it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-314 (Tex. 2006).

We overrule Bivin's issues on attorney fees.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.


JANET LITTLEJOHN
District Judge

Before Chief Justice Gray,
        Justice Davis, and
        Judge Littlejohn[1]
Affirmed
Opinion delivered and filed December 6, 2012
[CV06]

---

[1] Janet Littlejohn, Judge of the 150th District Court of Bexar County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2005).