

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00231-CV

James W. **CARROLL**,
Appellant

v.

Joan **CASTANON**,
Appellee

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 1998-CI-09347
Honorable John D. Gabriel Jr., Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  December 10, 2014

REVERSED AND REMANDED

James W. Carroll appeals the trial court's order awarding Joan Castanon a $1,000,000.00 monetary judgment in an action to enforce a divorce decree.  Carroll raises numerous issues on appeal, primarily asserting that the trial court's order impermissibly modified the divorce decree. Carroll also contends the order does not reassess attorney's fees as previously directed by this court.  We reverse the portions of the trial court's order awarding the monetary judgment and attorney's fees and remand the cause to the trial court for further proceedings.

**BACKGROUND**

In a final divorce decree signed on November 16, 1999, Carroll was ordered to designate Castanon as a "former spouse beneficiary" under Carroll's Survivor Benefit Plan ("SBP"). Castanon was ordered to pay the premiums for the SBP. When Carroll retired from the military in February 2004, he applied for the SBP and designated Castanon as the beneficiary; however, his application was denied.

In November 2004, Castanon filed a motion to enforce and clarify the divorce decree, raising issues regarding Carroll's military retirement pay and the SBP. In June 2006, the trial court signed an order providing the following with regard to the SBP:

> The Court finds that Movant is entitled to be named as the former spouse beneficiary under Respondent's Armed Services Survivor Benefit Plan and that if able, Respondent should make application to enroll Movant at full value of fifty-five percent (55%) and in a timely manner. The Court further finds that all costs associated with the voluntary enrollment in Respondent's Armed Services Survivor Benefit Plan shall be paid by Movant. The Court further finds that if Movant cannot be enrolled in Respondent's Armed Services Survivor Benefit Plan or if she deems it necessary to purchase any number of life insurance policies insuring the life of Respondent during the two year period it takes for the Armed Services Survivor Benefit Plan to become effective, or, if she deems, any number of life insurance policies in lieu of the Armed Services Survivor Benefit Plan, that Respondent shall allow Movant to carry any life insurance policy or policies on him at her own expense and upon written notification by Movant, to attorneys of record, Respondent shall submit to any physicals or other requirements required by the life insurance company or companies to name Movant as beneficiary of said policies insuring the life of Respondent.

Pursuant to this order, Carroll signed an application for a USAA life insurance policy in July 2006; however, he subsequently withdrew the application after the trial court granted his motion for new trial.

In October 2007, the trial court held another hearing on Castanon's motion and subsequently signed an order that stated the following with regard to the life insurance policy:

> IT IS THEREFORE ORDERED, that Respondent shall immediately deliver to Movant a completed Life Insurance Application(s) required in order to obtain a One

Million Dollar ($1,000,000.00) death benefits coverage, twenty (20) year term life insurance policy(s) insuring the life of Respondent, James W. Carroll, and naming Movant, Joan Castanon, as owner of said policy. The Court finds that Movant had previously agreed to pay the premiums to maintain said policy in full force and effect at her sole cost and expense and therefore IT IS SO ORDERED. Respondent is ORDERED to comply with all requirements necessary to maintain said policy in full force and effect, during the 20 year term of said policy, including, but not limited to Respondent submitting to any and all physicals or other requirements imposed by the Insurance Policy provider of said policy. IT IS SO ORDERED.

Carroll appealed this order.

On appeal, Carroll argued that "the trial court's order inappropriately modified the divorce decree by directing him to apply for and maintain a $1,000,000 life insurance policy in favor of" Castanon. *Carroll v. Carroll*, No. 04-08-00063-CV, 2009 WL 89704, at *4 (Tex. App.—San Antonio Jan. 14, 2009, no pet.) (mem. op.) ("*Carroll I*"). Carroll further argued that he "made a reasonable effort to comply with the terms of the divorce decree by applying for the Survivor Benefit Plan at the time of his retirement when he was eligible. However, his application was denied because more than one year had passed since the divorce decree had been signed and [Castanon] had not filed for a deemed election within one year of the divorce as required by federal law." *Id*. Instead of addressing whether the order modified the divorce decree, this court noted that the record reflected that Carroll "agreed to apply for a life insurance policy to replace the Survivor Benefit Plan." *Id*. This court quoted Carroll's attorney as stating, "So, we agreed on the record, Mr. Carroll agreed on the record that he would apply for a life insurance policy at the movant's expense insuring his life to replace the SBP policy." *Id*. Based on the record, this court concluded, "Thus, [Carroll] agreed that he would apply for a life insurance policy listing [Castanon] as a beneficiary." *Id*. Holding that Carroll could not lead the trial court into error by agreeing to apply for the life insurance policy and then complain about it later on appeal, this court affirmed the portion of the trial court's order regarding the life insurance policy. *Id*. This court also, however, reversed the portion of the trial court's order relating to the division of Carroll's

- 3 -

military retirement benefits, holding the order "improperly made substantive changes to the decree" with regard to the retirement benefits. *Id*. at *2-4. Noting that the trial court would be required to recalculate the retirement benefit payments and reconsider the award of attorney's fees, the case was then remanded to the trial court for further proceedings. *Id*. at *4.

In December 2010, Castanon filed a motion for finalization of enforcement. After a hearing on Castanon's motion in March 2011, Carroll provided applications for twelve different life insurance policies; however, all of the applications were ultimately denied because of Carroll's health issues. Additional hearings were held regarding the finalization of enforcement in June and August 2012. After those hearings, the trial court awarded Castanon a $1,000,000.00 monetary judgment because Carroll failed to deliver a $1,000,000.00 life insurance policy to Castanon. Carroll appeals this order.

## STANDARD OF REVIEW

A trial court's ruling on a post-divorce motion for enforcement is reviewed under an abuse of discretion. *In re Marriage of Pyrtle*, 433 S.W.3d 152, 159 (Tex. App.—Dallas 2014, pet. denied). "A trial court abuses its discretion if it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *DeGroot v. DeGroot*, 369 S.W.3d 918, 922 (Tex. App.—Dallas 2012, no pet.). Under this standard, sufficiency of the evidence is not an independent ground of error; however, it is a relevant factor in assessing whether the trial court abused its discretion. *Pyrtle*, 433 S.W.3d at 159; *see also Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.) ("Under an abuse of discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error."). When reviewing the legal sufficiency of the evidence, the court must consider the evidence in the light most favorable to the trial court's order and indulge every reasonable inference that supports it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). If there is some evidence with

substantial or probative character to support the decision, then the trial court does not abuse its discretion. *Pyrtle*, 433 S.W.3d at 159.

## LAW OF THE CASE

Ordinarily, a court of appeals is bound by its initial decision if there are subsequent appeals in the same case. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). "The 'law of the case' doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). As previously noted, in *Carroll I*, this court overruled Carroll's issues challenging the portion of the trial court's order regarding the life insurance policy, holding Carroll "agreed to apply for a life insurance policy to replace the Survivor Benefit Plan." 2009 WL 89704, at *4. This court's holding was based on the legal principle that "'a party cannot lead a trial court into error and then complain about it later on appeal.'" *Id.* (quoting *Hudson v. City of Houston*, No. 14-03-00565-CV, 2005 WL 3995160, at *6 (Tex. App.—Houston [14th Dist.] Jan. 6, 2005, no pet.) (mem. op.)). Therefore, under the law of the case doctrine, Carroll is bound by this court's decision in *Carroll I* that he agreed to apply for a life insurance policy to replace the SBP, and accordingly, any issues he raises in this appeal contending that this requirement modifies the divorce decree are overruled.

## MONETARY JUDGMENT

Carroll's primary complaint in this appeal is that the trial court was without authority to modify the 2007 order by awarding a monetary judgment to Castanon. Carroll asserts that "[t]his order would provide [Castanon] the immediate benefit of an incredible amount of money, not contemplated by the divorce decree, more than double the total amount of the community assets that were divided at the time of the divorce, regardless of whether she dies before him." Carroll further asserts the SBP "provides no immediate benefits to the former spouse and should the former

spouse predecease the military member no benefits whatsoever will accrue to the former spouse. SBP is a contingent annuity with no present value."[1] Castanon responds that the trial court properly "substituted a money judgment (as authorized by section 9.010) for a life-insurance policy that had become an inadequate remedy."

Section 9.010(a) of the Texas Family Code states that "[i]f a party fails to comply with a decree of divorce or annulment and delivery of property awarded in the decree is no longer an adequate remedy, the court may render a money judgment for the damages caused by that failure to comply."[2] TEX. FAM. CODE ANN. § 9.010(a) (West 2006). In the trial court's 2007 order which Castanon was seeking to enforce, Carroll was ordered to "deliver to [Castanon] a completed Life Insurance Application(s) required in order to obtain a One Million Dollar ($1,000,000) death benefits coverage, twenty (20) year term life insurance policy(s) insuring the life of Respondent, James W. Carroll, and naming Movant, Joan Castanon, as owner of said policy." In *Carroll I*, this court affirmed this portion of the 2007 order on the basis that Carroll had "agreed to apply for a life insurance policy." 2009 WL 89704, at *4.

In the findings of fact issued by the trial court in support of the $1,000,000.00 judgment, the trial court found that Carroll "failed to obtain and maintain a life insurance policy as agreed;" however, the only "property" Carroll agreed to and was ordered to deliver was an *application* or *applications* for a life insurance policy. In its findings of fact, the trial court further found that Carroll "failed to cooperate in obtaining a life insurance policy," and that by failing to cooperate in obtaining a life insurance policy he breached his representation to the court. As this court held

---

[1] In a separate issue, Carroll challenges the award of $1,000,000.00, noting Castanon was not required to pay the premiums for the life insurance policy; therefore, her damages were necessarily less than $1,000,000.00. We do not reach this issue because its resolution is not necessary to the disposition of this appeal. TEX. R. APP. P. 47.1.

[2] Section 9.010(b) addresses the failure to deliver monetary payments awarded in the decree. TEX. FAM. CODE ANN. § 9.010(b) (West 2006).

in *Carroll I*, however, the only "representation" or agreement Carroll made was to "apply for a life insurance policy." Following this court's February 2009 opinion in *Carroll I* and the trial court's hearing in March 2011 on the motion filed by Castanon in December 2010, Carroll complied with the 2007 order by delivering the required application(s). In fact, Carroll applied directly for three different policies and indirectly for nine others. Although all twelve applications were denied, Carroll did not "fail to comply" with the trial court's order because he delivered the "property" he was required to deliver. TEX. FAM. CODE ANN. § 9.010 (West 2006).[3]

Moreover, under section 9.010(a), a monetary judgment may be awarded when the "delivery of property" awarded in a decree is no longer an adequate remedy. *Id.* § 9.010(a). In section 9.009 of the Family Code, the legislature refers to "delivery of property" as the delivery of "specific existing property awarded." TEX. FAM. CODE ANN. § 9.009 (West Supp. 2014). In this

---

[3] While not relevant to the application of section 9.010(a) in this case, the trial court also found that Carroll knew he was uninsurable in 2007 when he agreed to apply for the policy. There is no evidence in the record to support this finding. In fact, at the March 2011 hearing, the expert witness called by Castanon was asked about Carroll's insurability as follows:

> Q. Do you have an opinion as to whether or not Mr. Carroll would or would not be insurable or is it a waste of time to do this process?
> A. That's not a decision that I am qualified [to] make. That is a decision that the carrier underwriters make. Based on my experience and based on my conversations with the two underwriters that I spoke with, I would say that he's borderline. And it would be largely dependent on a particular carrier, if they feel comfortable with that particular condition and agreed to write it, or if they would decline to provide coverage.
> Q. Have you seen in your practice that a person was not insurable in 2009 may become insurable simply by the period of longevity showing that the medical condition that they had cardiac-wise in this case, may have resolved itself?
> A. That is entirely possible. And even though the condition may not have resolved itself, which typically with a cardiac conditions [sic], cancer, conditions of that nature, never completely go away at least in an underwriter's opinion. The longer from the date of onset or diagnosis that the person is under treatment, takes medication, has some sort of attention to that condition, the more stability that the carrier is going to identify in that particular condition and treatment.
> So that basically they know that the treatment was doing what is was intended to do, then it becomes more likely that the insurer would be eligible for coverage at some point in the future where they would not be eligible perhaps or obtain a higher premium offer closer to the date of diagnosis.

If the expert witness could not opine as to whether Carroll was insurable in 2011 because the decision had to be made by the carrier underwriters, Carroll could not have known that he was uninsurable when he agreed to apply for the policy in 2007 simply based on his cardiac condition. The record does establish that Carroll believed he was uninsurable for the first time in 2009 when his application for his own USAA life insurance policy was denied.

case the only "specific existing property awarded" in the trial court's order is a life insurance application or applications, which distinguishes this case from other cases in which section 9.010 has been applied. For example, in *In re Marriage of Bivins*, the trial court applied section 9.010 to award money damages to the former wife because the former husband failed to deliver the marital residence in good repair as required by the divorce decree. 393 S.W.3d 893, 898-99 (Tex. App.—Waco 2012, pet denied). Similarly, in *Fambro v. Eddleman*, the trial court properly applied section 9.010 to award a monetary judgment against a former husband who failed to deliver the livestock he was required to deliver under the decree. No. 11-02-00190-CV, 2004 WL 68747, at *3-5 (Tex. App.—Eastland Jan. 15, 2004, no pet.) (mem. op.); *see also Strahan v. Strahan*, No. 01-01-00614-CV, 2003 WL 22723432, at *2-4 (Tex. App.—Houston [1st Dist.] Nov. 20, 2003, no pet.) (mem. op.) (awarding monetary judgment under section 9.010 based on former wife's failure to deliver vehicle); *cf. Fowler v. Fowler*, No. 02-07-00274-CV, 2008 WL 2330987, at *3-4 (Tex. App.—Fort Worth June 5, 2008, no pet.) (mem. op.) (holding trial court did not abuse its discretion in refusing to award monetary judgment based on former husband's failure to deliver furniture where evidence did not establish former husband failed to comply with the decree); *Mosley v. Mosley*, No. 01-04-00425-CV, 2006 WL 3316974, at *1-2 (Tex. App.—Houston [1st Dist.] Nov. 16, 2006, no pet.) (mem. op.) (affirming trial court's order enforcing delivery of a promissory note and the keys and remote to a vehicle under section 9.009). As is readily apparent from these examples, section 9.010(a) is intended to be applied when a party fails to deliver tangible personal or real property that is existing at the time of the divorce and specifically awarded in the decree. *See* TEX. FAM. CODE ANN. §§ 9.009, 9.010(a) (West 2006 & Supp. 2014).

In this case, Carroll agreed to apply for a life insurance policy to replace the SBP, and the trial court ordered Carroll to deliver the application(s) and Castanon to pay any premiums to "maintain" any policy that was issued. Accordingly, the only "property" that Carroll was required

to deliver was the application(s). Because Carroll complied with the trial court's order by delivering this "property," the trial court abused its discretion in awarding the monetary judgment.

## ATTORNEY'S FEES

The issue of attorney's fees must be reconsidered by the trial court due to the disposition of this appeal. When a judgment is reversed on appeal, an award of attorney's fees may no longer be equitable and just. *Boerschig v. Sw. Holdings, Inc.*, 322 S.W.3d 752, 768 (Tex. App.—El Paso 2010, no pet.). In light of our disposition of this case, we reverse the award of attorney's fees and remand this issue so the trial court can reconsider the award of attorney's fees.

## CONCLUSION

Because the trial court abused its discretion in awarding the monetary judgment, we reverse the portions of the trial court's order awarding a monetary judgment and attorney's fees and remand the cause to the trial court for further proceedings consistent with this opinion.

Luz Elena D. Chapa, Justice